UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IRIDEX CORPORATION,              )
                                )
        Plaintiff,              )
                                )
vs.                             )        Case No. 4:05CV1916 CDP
                                )
SYNERGETICS USA, INC., et al.,  )
                                )
        Defendants.             )

## MEMORANDUM AND ORDER

Plaintiff Iridex Corporation is the owner of a patent covering a fiber optic connector system for use with medical lasers. Iridex claims that defendants Synergetics USA, Inc. and Synergetics, Inc. are infringing its patent. This order deals with some, but not all, of the parties' numerous motions for summary judgment.

I will grant the motion for summary judgment filed by Synergetics USA, because the undisputed evidence shows that it does not make or sell the alleged infringing device. Instead, its wholly-owned subsidiary, Synergetics, Inc. is the proper defendant. To the extent Iridex attempts to hold the parent company liable on an "alter ego" or inducement theory, neither the facts nor the law support liability. Synergetics USA only came into existence a month before this lawsuit was filed, and there is no evidence to support an inference that either corporation

was created fraudulently or to shield the other from meeting its obligations. These are two ongoing businesses that merged for reasons unrelated to this lawsuit, and although the lawyers and witnesses can be faulted for failing to differentiate properly between the two, the mistakes in the case do not raise a genuine issue of material fact.

Next, I will deny Synergetics' motion for summary judgment based on the repair and reconstruction doctrine, because this doctrine has no relevance where the repair or replacement parts are used in an infringing device, which is what Iridex alleges here. I will grant Iridex's cross-motion for summary judgment on this issue, and Synergetics will not be allowed to present this defense at trial.

Finally, I conclude that genuine issues of material fact remain regarding whether Iridex's claims are barred or limited because of laches or estoppel. These equitable issues are for the court to decide, but I must deny both parties' motions for summary judgment because factual disputes exist.

## I. <u>Background</u>

Both Iridex and Synergetics, Inc. manufacture ophthalmic medical laser instruments. Since February 4, 1992, Iridex has been the holder of United States Patent No. 5,085,492 (the '492 patent), which relates to an optical fiber connector system that determines whether a probe is properly attached to a laser and

identifies what kind of device is attached.

During the 1990s, Synergetics, Inc. began developing its Quick Disconnect connector system which allow its probes to be used with Iridex's lasers. The Quick Disconnect connector has two parts: a Quick Disconnect adapter portion and a Quick Disconnect BNC connector portion (the Quick Disconnect probe). Each Synergetics Quick Disconnect probe is used only once, while the Quick Disconnect adapters are reused for multiple surgeries. Synergetics, Inc. specifically designed the adapter/probe combination to be used with Iridex's lasers.

## II. Discussion

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by

affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

## A.    Claims against Synergetics USA

Synergetics USA, Inc. was formed in September 2005, only a month before this suit was filed against it. It was formed following a merger transaction between Valley Forge Scientific Corp., a publicly-traded Pennsylvania corporation, and Synergetics, Inc., a privately-held Missouri corporation. Following the merger Valley Forge was changed from a Pennsylvania corporation into a Delaware corporation and was renamed Synergetics USA, Inc. Synergetics, Inc. became a wholly-owned subsidiary of Synergetics USA, Inc. Counsel have referred to this as a "reverse triangular merger."

Some of the officers, directors, and employees of the two companies are the same, although the companies have distinct boards and officers. Gregg Scheller, who founded Synergetics, Inc. in 1991, is now the CEO of Synergetics USA and the President of Synergetics, Inc. The companies have guaranteed some of each other's debt. Synergetics USA and Synergetics, Inc. have different tax identification numbers and are legally separate corporations. They keep separate

books and records.  They file consolidated financial statements, in accord with

Generally Accepted Accounting Principles for corporations and wholly-owned

subsidiaries.  Synergetics USA has fewer than 30 employees; Synergetics, Inc. has

more than 300 employees.  Synergetics USA continues to operate the business that

Valley Forge operated before the merger, which includes the manufacture of

electrical surgical generators, among other things, while Synergetics, Inc.

continues in the business of manufacturing and selling ophthalmic and other

medical instruments.

Iridex initially sued only Synergetics USA in this case.  Synergetics USA

filed an answer admitting that it had sold the Quick Disconnect connector system

in the past.  Synergetics USA participated in discovery, including answering

interrogatories and requests for admissions.  At some point defense counsel

informed plaintiff's counsel that the correct defendant should have been

Synergetics, Inc., not Synergetics USA, Inc.  Iridex believed that it had valid

claims against both defendants, however, and so refused to substitute one for the

other.  Instead it sought leave to amend to add the other defendant, and I allowed it

to do so.  In seeking to file its amended complaint, Iridex asserted that it

maintained a cause of action against Synergetics USA based on two theories: (1)

that Synergetics USA induced the infringement of its wholly owned subsidiary

Synergetics, Inc. and (2) that Synergetics USA could be held liable under the doctrines of joint business enterprise, single business enterprise, and alter ego. Synergetics USA now seeks summary judgment on all claims against it.

###### 1. Alter Ego

Iridex does not now seriously argue that Synergetics USA is the entity that sold the allegedly infringing devices in the years before it even existed. Instead, Iridex argues that Synergetics USA and Synergetics, Inc. should be treated by the court as the same company. It bases this argument largely on the confusing and contradictory testimony in this case and on the judicial admissions made in the litigation before defense counsel pointed out the mistake to Iridex's counsel. Some of the references are obvious mistakes, such as testimony referring to things that Synergetics USA did before September of 2005: these references must have been intended to refer to Synergetics, Inc. because Synergetics USA did not then exist. Even aside from this testimony, there is evidence of substantial confusion within Synergetics USA and Synergetics, Inc. about the corporate structures. For example, Iridex has provided evidence that at a Synergetics USA shareholder meeting a slide was shown referring to the company as Synergetics, Inc., and that at other times the companies have referred to Synergetics, Inc. as a division of Synergetics USA, rather than as a wholly-owned subsidiary. Synergetics has

provided affidavits stating that Synergetics USA does not, in fact, make and sell ophthalmic products, and that the products at issue in this case were at all times made by Synergetics, Inc., not by Synergetics USA.  Iridex does not contest the evidence that Synergetics, Inc. is the corporation that nominally makes and sells the Quick Connector products.  Rather, it relies on the numerous inconsistencies to show that the companies have not maintained separate corporate existences, and are really alter egos of one another.

Iridex also argues that Synergetics, Inc. is undercapitalized, but it has no evidence to support this claim – it bases the arguments on extrapolation from certain of the financial statements, which, it claims, show that Synergetics, Inc. would not be able to fully satisfy a $25 million judgment if Iridex were to obtain one in this case.  Synergetics, on the other hand, has provided undisputed evidence that it has $28.3 million in tangible assets and $14.4 million in net assets; its current ratio (current assets/current liabilities) is 1.63.  The undisputed evidence shows that both Synergetics, Inc. and Synergetics USA are ongoing businesses that are able to meet their operating obligations.

Under Missouri law, there is a presumption of corporate separateness, and courts do not lightly disregard the corporate form to hold a parent company liable for the torts of a subsidiary.  <u>Mid-Missouri Telephone Co. v. Alma Telelephone</u>

Co., 18 S.W.3d 578, 582 (Mo. Ct. App. 2000).[1]  A wholly owned subsidiary is generally treated as a separate entity.  Id.

Missouri courts will sometimes "pierce the corporate veil" and hold a parent company liable for the torts of its subsidiary under the "instrumentality" or "alter ego" rule.  In order to meet its burden under this rule, Iridex must show:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>
> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

Radaszewski by Radaszewski v. Telecom Corp., 981 F.2d 305, 306 (8th Cir. 1992); see also Mobius Management Systems, Inc. v. West Physicians Search, LLC, 175 S.W.3d 186, 189 (Mo. Ct. App. 2005).  The undisputed facts show that Iridex cannot meet its burden on at least two of these elements.

---

[1]  There is some indication that Federal Circuit common law should govern this issue instead of Missouri law.  See Gubb v. P&M Serv., Inc., 2006 WL 2559794, at *4, n. 9 (E.D. Mich. 2006).  Because the parties have argued based on Missouri law and because Missouri law and Federal Circuit law lead to the same result on this issue, I have applied Missouri law.  See Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 552 (Fed. Cir. 1990).

Even when the confusing testimony is considered in the light most favorable to Iridex, there is no evidence that either of the two Synergetics corporations was created to perpetrate a fraud or justify a wrong. Iridex argues that Synergetics, Inc. is undercapitalized and that fraudulent intent can be inferred from undercapitalization, but the evidence does not support that inference. There is no evidence that Synergetics, Inc. was undercapitalized at the time it was created, and undercapitalization does not simply mean that a company might not have ready cash on hand in whatever amount a plaintiff thinks is necessary to satisfy that plaintiff's damage claims. The adequacy of capitalization is normally measured at the time of incorporation and turns on the nature of the business of the particular corporation. See 66, Inc. v. Crestwood Commons Redev. Corp., 998 S.W.2d 32, 41 (Mo. 1999). Inadequate capitalization can be found through "circumstantial evidence tending to show an improper purpose or reckless disregard for the rights of others" and means "assets that are very small in comparison to known risks associated with the planned corporate enterprise." Id. Undercapitalization is not, in and of itself, unlawful, but the creation of an undercapitalized subsidiary may create an inference that the parent is deliberately or recklessly creating a business that will not be able to pay its bills or satisfy judgments against it. Radaszewski, 981 F.2d at 308. Synergetics, Inc. was created nearly fifteen years before the

present lawsuit.  During that time period, Synergetics, Inc. has met it regular

business obligations.  There is simply no evidence that it was undercapitalized

when it was formed, or that it has been unable to pay its bills or meet its

obligations over the years.

To the extent that Iridex is arguing that Synergetics USA was created for the

purpose of stripping Synergetics, Inc. of the ability to pay a judgment, this

argument also fails.  Synergetics USA is not a shell or fraudulently-created

corporation.  It runs the existing business of Valley Forge Scientific.  The

evidence provided regarding the creation and financing of the new company

shows nothing irregular, and Iridex has pointed to nothing that raises any red

flags.  There is simply no evidence that either corporation was formed for an

improper or fraudulent purpose.

Finally, Iridex has not attempted to address the third element required for

the court to pierce the corporate veil, that Synergetics USA's control of

Synergetics Inc. proximately caused the injury or unjust loss.  Most of the

potential damages incurred by Synergetics, Inc. were incurred long before

Synergetics USA came into existence, so even if Synergetics USA was somehow

now controlling the subsidiary, Iridex cannot argue that it did so at the time of

those damages.  And Iridex has pointed to nothing in the time since September

2005 to show that Synergetics USA's alleged control of Synergetics, Inc. led to Iridex's damages.

Because Iridex cannot establish the elements necessary to pierce the corporate veil, Synergetics USA cannot be liable to Iridex under the alter ego doctrine.

## 2. Inducement of Infringement

Iridex could maintain its claims against Synergetics USA if it could show that Synergetics USA induced Synergetics, Inc. to infringe the patent:

> (b) Whoever actively induces infringement of a patent shall be liable as an infringer.

35 U.S.C. § 271. For Iridex to establish that Synergetics USA induced Synergetics, Inc.'s infringement, Iridex would be required to show that Synergetics USA's actions induced infringing acts and that it knew or should have known that its actions would induce actual infringement. DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1304 (Fed. Cir. 2006). Iridex must prove that Synergetics "actively and knowingly aided and abetted another's direct infringement." Id. at 1305. Mere knowledge of possible infringement is not enough, but instead specific intent must be proven. Id. Liability for inducement may be imposed even without piercing the corporate veil. Manville Sales Corp., 917 F.2d at 553.

There are no genuine disputes of material fact on this question. Iridex has presented nothing that would show that Synergetics USA caused Synergetics, Inc. to infringe the patent. Synergetics, Inc. was making and selling the Quick Disconnect connector system long before the merger that created Synergetics USA. Additionally, Iridex has not presented any evidence to show that Synergetics USA intended to induce infringement even after Synergetics USA came into existence.

Synergetics USA has shown that there is no evidence in the record under which it could be held liable to Iridex, and so it is entitled to judgment as a matter of law.

B.    **The Doctrine of Repair versus Reconstruction**

The Synergetics Quick Disconnect connector system has two parts: an adapter and a connector. The connector holds the probe that actually delivers the energy to the patient's eye. The probes (and the connectors) are only used once, but the adapter remains on the laser and is typically reused multiple times, each time with a new probe and connector. Synergetics had distributed 3376 Quick Disconnect adapters by August 2006. In contrast, it has sold well over one hundred thousand Quick Disconnect probes, and approximately 74% of the probes sold have been for use with the Iridex laser. Synergetics has filed a motion for

partial summary judgment asserting that any damages Iridex might recover should be limited to an award corresponding to the 3376 adapter/probe combinations distributed by Synergetics, and that Iridex cannot recover any damages for sales of the remaining probes.

Once a person has the legal right to use a patented invention, that person may replace spent, unpatented parts of the invention without infringing the patent. See Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336 (1961) ("Aro I"). Repair or replacement of parts is thus allowed, but reconstruction is not. Synergetics argues that even if Iridex can show that its sales of the adapter/probe combination constitute infringement, its sales of the probes without the adapters cannot be infringement, but rather are permitted sales of replacement parts.

Synergetics's argument that damages cannot be imposed for any probes sold after the initial adapters were sold fails. The doctrine of repair versus reconstruction only applies to the repair of products actually licensed under patents. See Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 480 (1964) ("Aro II") ("The reconstruction-repair distinction is decisive, however, only when the replacement is made in a structure whose original manufacture and sale have been licensed by the patentee."). Synergetics did not have a license to

sell the adapters with the probes, so selling replacement probes is also unlicensed activity. If Synergetics' sales of the original adapter/probe combinations are proved at trial to be infringement, then the sales of the additional probes are also infringement. See also Carborundum Co. v. Molten Metal Equipment Innovations, Inc., 72 F.3d 872 (Fed. Cir. 1995); Mallinckrodt, Inc. v. Medipart, Inc., 976 F.2d 700, 709 (Fed. Cir. 1992).

Contrary to Synergetics' assertion, this decision is not inconsistent with the Federal Circuit's decision in King Instrument Corp. v. Otari Corp., 814 F.2d 1560 (Fed. Cir. 1987). In the first appeal in that case, the Court of Appeals found that the record was insufficient to support district court's award of damages for spare parts, and so it remanded the case to the district court. The district court then entered an injunction that included spare parts, and the Court of Appeals vacated the reference to spare parts in the injunction. The Court noted that the determination of whether something is a repair part or reconstruction part requires "delicate distinctions" and so it remanded the entire issue to the district court. 814 F.2d at 1564. This was not a final determination that the injunction would not be proper if an award of damages for spare parts were ultimately entered, nor was it a determination that the trial court could not award damages for spare parts after it held further proceedings.

In cases where the infringer is repairing its own infringing product, the patentee is entitled to lost profits on spare parts in order to be fully compensated. Carborundum, 72 F.3d at 882. In Carborundum, the defendant sold both the original infringing product and the repair parts. 72 F.3d at 876. Like Synergetics in this case, the defendant argued that by being ordered to pay damages to the plaintiff for its sale of the infringing device, it obtained an implied license for its customers to repair that device. The Federal Circuit rejected this argument and upheld a permanent injunction precluding the infringer from selling repair parts to customers who had previously purchased the infringing product. Id. at 882. The Federal Circuit recognized that the patentee was entitled to compensation for both past and future repair parts sales.

The Federal Circuit's case law establishes that if Synergetics' combination connector system infringes, Iridex is entitled to damages that include sales of the probes without adapters. Iridex is therefore entitled to summary judgment on this issue, and Synergetics will not be allowed to present evidence or argument about it at trial.[2]

_____

[2]Although Iridex's request for summary judgment is actually late under the Case Management Order, I will still grant summary judgment. Iridex would have been entitled to summary judgment even if it had not filed a motion, because this is a legal issue and the facts related to it are undisputed. See Nebraska Health Care Ass'n Inc. v. Dunning, 575 F. Supp. 176, 177 (D. Neb. 1983) (court can grant summary judgment for non-moving party if it is clear that case warrants that result).

### C.    Defenses of Laches and Estoppel

Synergetics asserts that Iridex waited too long to bring this claim of infringement, and that therefore the claims are barred by the equitable doctrines of laches and estoppel.  Both parties have moved for summary judgment, each arguing that the undisputed facts show that it should prevail on these defenses.  Although these defenses are issues for the court, if genuine disputes of material fact exist, it is inappropriate to decide these issues on summary judgment.  Ulead Sys., Inc. v. Lex Computer & Mgt. Corp., 351 F.3d 1139, 1146 (Fed. Cir. 2003).  The parties have provided many pages of  evidence about their dealings with one another and about what Iridex knew about Synergetics' allegedly infringing activities, but this evidence is far from undisputed.

By July 1, 1998, Iridex was in possession of two flyers advertising Synergetics, Inc.'s adapter technology.  On February 8, 1999, Iridex sent a cease and desist letter to Synergetics, Inc., claiming that Synergetics, Inc's technology infringed on the '492 patent.  On February 26, 1999, Synergetics, Inc. responded to Iridex's letter, stating that it believed that its laser probes did not infringe and inviting a response from Iridex.  Iridex did not respond until January 22, 2002, almost three years later.

On February 13, 2002, Synergetics, Inc. filed a complaint seeking a

declaratory judgment of non-infringement and invalidity in this Court, Synergetics, Inc. v. IRIS Medical Instruments, Inc. and Iridex, Inc., Case No. 4:02CV238 CDP.  On March 15, 2002, Synergetics sent Iridex a copy of the complaint and a letter.  The parties exchanged correspondence, and in May of that year reached an agreement that Synergetics would dismiss the declaratory judgment action and Iridex would file any future suit concerning the '492 patent in the Eastern District of Missouri.

Iridex asserts that bilateral negotiations between the parties continued into the fall of 2002.  Iridex points to letters exchanged through April of 2004 and asserts that the parties were discussing licensing or merger possibilities. Synergetics, on the other hand, alleges that the only mention of licensing from the dismissal of the declaratory judgment action until the commencement of the present action was a single comment in a letter dated December 9, 2002.

### 1.    Laches

When a patent holder unreasonably delays filing suit, laches will bar any damages that the patent holder may have incurred before suing.  A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1028 (Fed. Cir. 1992).  To invoke laches, the defendant must establish (1) that the plaintiff delayed filing suit for an unreasonable and inexcusable length of time after it knew or reasonably should

have known of its claim against the defendant, and (2) that the delay prejudiced the defendant. A presumption of laches arises when a patentee delays bringing suit for more than six years after actual or constructive knowledge of the alleged infringement. Id.

Once the defendant establishes a six-year delay, the burden of production shifts to the plaintiff to put forth enough evidence to establish a genuine dispute that either the delay was reasonable and excusable or that there has been no prejudice to the defendant. Id. at 1037-38. If a genuine dispute exists as to either of these issues, than the presumption "bubble bursts," and the defendant bears the burden of persuasion as to both unreasonable delay and prejudice. Id. Excuses for the delay include, among other things: other litigation, negotiations with the accused, possibly poverty and illness under limited circumstances, wartime conditions, extent of infringement, and dispute over ownership of the patent. Id. at 1033. For negotiations to be considered an excuse, they must be "continuous and bilaterally progressing." A.C. Aukerman Co. v. Miller Formless Co., Inc., 693 F.2d 697, 700 (7th Cir. 1982).

Here, the presumption of laches might arise if Iridex's possession of the flyers advertising Synergetics' adapter technology by July 1, 1998 constituted knowledge of its claim against Synergetics. Iridex denies that it had knowledge of

the claim on that date, but this need not be resolved at this stage because Iridex has raised a genuine dispute of fact with regard to whether its delay in filing suit – whenever its knowledge might have arisen – was reasonable. Therefore, any presumption that might have applied dissolves, and Synergetics bears the burden of establishing both unreasonable delay and prejudice. Genuine issues of material fact exist with regard to both of these elements and therefore, neither side is entitled to summary judgment.

First, as to delay, there are factual disputes about when Iridex had knowledge of its claim. It appears that, at the very least, five years and eight months passed from the time Iridex had actual notice of its claim. While six years is required to establish a presumption of unreasonable delay, delays shorter than those at issue here have been found to be unreasonable by other courts. See Meyers v. Asics Corp., 974 F.2d 1304, 1307 (Fed. Cir. 1992). Iridex argues that any delay was not unreasonable because the parties were engaged in negotiations. Whether the letters and communications constitute negotiations is a question of fact. Resolution of this issue depends on a determination that cannot be made at this stage of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (at the summary judgment stage "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial").

Second, a genuine issue of material fact remains regarding whether Synergetics was prejudiced by Iridex's delay. Prejudice may be either economic or evidentiary. Aukerman, 960 F.2d at 1033. Economic prejudice arises when a defendant has incurred damages which likely would have been prevented by an earlier suit. Id. These losses are not merely those attributable to a finding of liability for infringement, but are a result of a change in the economic position of the alleged infringer during the period of delay. Id. Synergetics must present evidence that it would have behaved differently had Iridex filed suit earlier. Meyers v. Asics, 974 F.2d at 1307-08. Synergetics has presented evidence that it has suffered economic prejudice for a number of reasons, but that evidence is not undisputed. This evidence raises questions that I cannot resolve on summary judgment.

### 2. Estoppel

Estoppel is an equitable defense that would bar the patentee's claim in its entirety. Aukerman, 960 F.2d at 1028. To invoke estoppel, Synergetics must establish: (1) some misleading communication by Iridex, (2) reliance on the misleading communication, and (3) material prejudice. Id. at 1041-43. No presumption adheres to the elements of the estoppel defense. Id. at 1043. The

same factual dispute regarding prejudice that precludes summary judgment on laches also precludes summary judgment on estoppel. Genuine disputes remain concerning the other elements as well.

To establish a misleading communication by Iridex, Synergetics must show that Iridex's conduct supported an inference that it did not intend to press an infringement claim against Synergetics. Id. at 1042. The most common situation where this arises is when "the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up for years." Id. That is what Synergetics says happened here. Iridex, on the other hand, has presented evidence that it says shows the parties were engaged in ongoing negotiations regarding the infringement claim. Genuine disputes of material fact remain as to this element.

To establish reliance, Synergetics must establish that it had a relationship or communication with Iridex that lulled it into a sense of security. Aukerman, 960 F.2d at 1043. Synergetics says it believed that the threat was gone, and there is some supporting documentary evidence, but this is not an undisputed fact. Additionally, Synergetics' asserted reliance on advice of counsel does not necessarily negate its claim that it relied on Iridex's apparent abandonment of the infringement claim. See Wafer Shave v. The Gillette Co., 29 U.S.P.Q.2d 1419,

1426 (D. Mass. 1993) ("To find otherwise would encourage those accused of infringement not to seek legal advice, but to rely solely on a patentee's future conduct and to have faith that such conduct will prevent the patentee from succeeding in a lawsuit."); <u>ABB Robotics, Inc. v. GMFanuc Robotics Corp.</u>, 828 F. Supp. 1386, 1399 n. 27 (E.D. Wis. 1993) ("To hold that a defendant who believes his device does not infringe, but who also relied upon the inaction of the patentee may not assert the defense of estoppel, is contrary to the principles of equity."); <u>cf.</u> <u>Hall v. Aqua Queen Mfg.</u>, 93 F.3d 1548, 1558 (Fed. Cir. 1996) (summary judgment inappropriate where alleged infringer could have been relying on belief that patent was invalid rather than on patentee's lack of action) . Genuine issues of fact remain on all elements of the estoppel defense.

## III.   <u>Conclusion</u>

Iridex cannot show that the corporate veil should be pierced or that the parent corporation induced the acts of the subsidiary, so I will grant summary judgment to Synergetics USA on all claims against it.  I will dismiss its counterclaim as moot.  I will grant summary judgment to Iridex on Synergetics' repair versus reconstruction defense, and Synergetics will not be permitted to make this argument at trial.

As I have concluded that genuine disputes of material fact remain on the

equitable defenses of laches and estoppel, these issues will be reserved for trial. I

will hear the evidence on these non-jury issues at the same trial as the jury issues,

because much of the evidence will undoubtedly overlap. No evidence that is

relevant solely to these defenses may be presented to the jury. Instead, I will hear

any non-jury evidence immediately upon the jury's beginning deliberations.

Additionally, if a witness who is testifying in the jury portion of the case has

limited non-jury evidence to present, I can hear the non-jury testimony from that

witness during a break or at the beginning or end of the jury trial day, instead of

requiring the witness to return at the end of the trial. The parties are expected to

discuss the schedule for doing this before the trial begins, and tell me in advance

which witnesses may need to give non-jury testimony during the jury phase of the

trial. Unless the parties tell me otherwise, I will expect all evidence to be

presented as soon as the jury issues are under submission. I encourage the parties

to reach as many stipulations as possible regarding the non-jury evidence to be

presented.

Accordingly,

**IT IS HEREBY ORDERED** that Synergetics Inc.'s motion for joinder

[#93] in Synergetics USA's motion for summary judgment on laches and estoppel

is granted, and that motion is deemed filed by Synergetics, Inc.

**IT IS FURTHER ORDERED** that Synergetics USA, Inc.'s motion for summary judgment [#94] is granted; all claims against Synergetics USA, Inc. are dismissed with prejudice, and its counterclaim is dismissed as moot.

**IT IS FURTHER ORDERED** that Synergetics' motion for summary judgment related to repair [#96] is denied and Iridex Corp.'s cross-motion for summary judgment on the same issue [#163] is granted. The doctrine of repair will not limit Synergetics' liability in this case.

**IT IS FURTHER ORDERED** that the parties' motions for summary judgment regarding laches and estoppel [#65, #106] are denied.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 31st day of January, 2007.