UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IRIDEX CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:05CV1916 CDP |
| | ) |
| SYNERGETICS, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER AND MEMORANDUM

This patent infringement case is set for trial on April 16. I have already ruled on several summary judgment motions, and this order deals with the remaining pending motions. To summarize the rulings contained in this order: (1) Iridex is entitled to summary judgment on Synergetics' non-patent counterclaims, as the undisputed evidence shows that Synergetics cannot prove these claims; (2) I will allow Synergetics to withdraw its motion to amend its counterclaim; (3) I will grant Iridex's motion to compel in part; (3) I will deny all of Synergetics' motions related to discovery, including the motions to strike and to take additional discovery; and (4) I will deny all parties' requests for sanctions, and order that no further briefing will be allowed on any of these motions.

**I.       Synergetics' Non-Patent Counterclaims**

Synergetics' counterclaim contains three tort claims, all based on allegations

that Iridex made improper statements about Synergetics' products. Synergetics labeled Count II as "False Advertising, Commercial Disparagement, Trade Libel, Injurious Falsehood, Unfair Competition in Violation of the Lanham Act, 15 U.S.C. § 1125." It heads Count III as "Injurious Falsehood, Disparagement of Property, Slander of Goods, Commercial Disparagement, and Trade Libel in Violation of Missouri State Law." Count IV has a short title: "Defamation." Although the counterclaim contains many allegations of false and misleading statements, in the response to the summary judgment motion Synergetics reduced its claims of actionable falsehoods to its assertions that Iridex told customers and the FDA that Synergetics adapters (1) could cause Iridex lasers to make unintended laser emissions creating a safety hazard, and (2) could damage the laser and therefore void the warranty.[1] Synergetics alleged that these communications were false, that they misled customers, and that Synergetics lost customers, reputation, and goodwill and spent money responding to the allegedly false statements.

Iridex filed a motion for summary judgment arguing that Synergetics could

---

[1] The counterclaim also alleges that Iridex improperly referred to the Synergetics' products as inferior "aftermarket" probes and stated that the probes had not been "validated" by the FDA for use with Iridex lasers. Iridex addressed these issues in its summary judgment motion, but in response Synergetics indicated that it was relying only on the two alleged falsehoods listed above.

not prove that any statements Iridex made were false or misleading, nor could it prove that any statements Iridex made caused Synergetics any damages. In response, Synergetics has not presented any evidence to show that it can meet its burden of proof at trial. Instead it argues that it "will present substantial evidence" at trial. Synergetics' Answering Memorandum, docket entry # 218, at p.1. It also filed a flurry of discovery-related motions arguing that Iridex was responsible for its failure of proof, and seeking to strike the evidence Iridex presented in its reply brief.

    Synergetics bears the burden of proof on its counterclaims. Rule 56(c), Fed. R. Civ. P., mandates the entry of summary judgment against a party if, after adequate time for discovery, that party fails to make a showing sufficient to establish the existence of an essential element of the claim that the party will have the burden of proving at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "Celotex made clear that Rule 56 does not require the moving party to *negate* the elements of the non-moving party's case, . . . ." Lujan v. National Wildlife Fed'n, 497 U.S. 871, 885 (1990) (emphasis in the original). Iridex was not required to present evidence disproving Synergetics' assertions when it filed its motion for summary judgment. Once Iridex, as the moving party, pointed to the absence of evidence on essential elements of the claims, Synergetics, as the

party bearing the burden of proof, was required to respond with evidence showing there is an issue of fact for trial. Synergetics has failed to do so here, and it has had more than ample time for discovery.

Each of the non-patent counterclaims requires proof that the statements were false and that they caused injury to Synergetics. To prove false or deceptive advertising under the Lanham Act, Synergetics must show: (1) that Iridex made a false statement of fact in a commercial advertisement about its own or about Synergetics' product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) Iridex caused its false statement to enter interstate commerce; and (5) Synergetics has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to Iridex or by a loss of goodwill associated with its products. See United Industries Corp. v. Clorox Co., 140 F.3d 1175, 1180 (8th Cir. 1998). To establish injurious falsehood under Missouri law, Synergetics must prove: (1) the existence and extent of a legally protected interest affected by the falsehood; (2) the injurious character of the falsehood; (3) the falsity of the statement; (4) publication of the falsehood; (5) that the circumstances under which the publication was made were such as to make reliance on it by a third person reasonably foreseeable; (6)

the recipient's understanding of the communication in its injurious sense; (7) the recipient's understanding of the communication as applicable to Synergetics' interests; (8) the pecuniary loss resulting from the publication; and (9) Iridex's knowledge of the falsity of the statement or its reckless disregard as to its truth or falsity. See Annbar Assoc. v. American Exp. Co., 565 S.W.2d 701, 707 (Mo. Ct. App. 1978). And to recover for defamation Synergetics must prove that: (1) Iridex published the statement which Synergetics alleges to be defamatory; (2) the statement was false; (3) Iridex published the statement either with knowledge of its falsity or with reckless disregard for whether it was true or false at a time when it had serious doubts as to whether it was true; (4) the statement tended to deprive Synergetics of the benefit of public confidence and social associations; (5) the statement was read by others; and (6) Synergetics was thereby damaged. See Klein v. Victor, 903 F. Supp. 1327, 1330 (E.D. Mo. 1995) (citing Nazeri v. Missouri Valley College, 860 S.W.2d 303, 312 (Mo. en banc 1993).

The undisputed evidence shows that any statements Iridex made to customers and to the FDA were true. Iridex reported that unintended laser emissions could occur when the Synergetics adapter was used with the Iridex laser. This was a true statement. Although Synergetics argues to the contrary in its briefs, its own witnesses admitted under oath that unintended emissions could

take place if the adapter was attached or used improperly and that unintended emissions would indeed be a safety hazard. While they admitted the truth of the Iridex statements, the witnesses argued that this would be an unlikely event and that it would only happen if the customer made a series of mistakes. Synergetics' witnesses testified that no customers had ever reported such an occurrence.[2] This lack of complaints does not create a genuine issue for trial, especially when both the FDA and Synergetics' own witnesses agreed that unintended emissions could occur and would pose a safety hazard. The undisputed evidence shows that Iridex's statements about the potential safety hazard from unintended laser emissions were not false.

Iridex told customers that the laser could be damaged if the Synergetics adapter was used. This also was a true statement. Synergetics' witnesses admitted that they knew the adapter could be overtorqued and cause the laser's female bushing to be stripped. Customers complained about this, and lasers were turned in for repair because of it. Synergetics argues that somehow this does not qualify as damage, but again, the undisputed evidence shows that the statement was true.

---

[2]Synergetics also argues that its own testing showed no risk of unintended emissions, but it provided no foundation for its own claims of testing; its witnesses could not remember who did these tests, or how or when they were done. This is not admissible evidence and it cannot defeat summary judgment.

Synergetics' witnesses admitted that customers had reported many other problems, such as low power and the Iridex laser not recognizing that the Synergetics probe was attached. These statements support the truth of Iridex's statements about damage to the laser and increased service requests when the Synergetics adapter was used. Synergetics complains that Iridex told its customers that using the Synergetics adapter could void the Iridex warranty, but this cannot be an actionable falsehood, as Iridex had the right to set whatever warranty conditions it chose for its own products.

Synergetics has likewise failed to produce any evidence that it was damaged by Iridex's statements. Synergetics has presented no admissible evidence that any customer stopped buying Synergetics' products, or that its goodwill was damaged at all. It cites to its damages expert's report, but that report simply assumes that certain accounts were lost. Synergetics produced some testimony indicating that it was only claiming damages for accounts that it was "certain" were lost because of Iridex's actions, but there is no evidence to support that certainty. There are hearsay references that someone told someone that an account might be lost because a customer said something about something Iridex said or did, but there is no admissible testimony that any customer changed its behavior. There is no admissible evidence that there was any damage to goodwill. Although Synergetics

claims it modified its product in response to the FDA inquiry, this cannot be a basis for damages because Synergetics was required to meet FDA requirements. And because the FDA inquiry was not based on any false statement by Iridex, of course, whatever Synergetics may have done in response cannot be tied to any wrongful conduct of Iridex.

Even though Synergetics failed to produce admissible evidence to prove falsehood, Iridex, in its reply brief, cited specific evidence of truthfulness and also cited evidence rebutting some of Synergetics' other unsupported arguments. Synergetics responded by moving to strike the evidence, but there was nothing improper about Iridex's reply brief. Synergetics also moved to compel further answer to its interrogatory numbered 19, but Iridex's previous response to the interrogatory was sufficient. I also find that Synergetics' timing indicates it knew its motion to to compel was meritless – it waited until after the briefing of the motion for summary judgment was complete even though it had previously obtained a Rule 56(f) extension of time to respond to the motion.

Interrogatory 19 asked for identification of instances when Iridex lasers had been serviced "due to Synergetics' adapter" being used with the laser. It also sought detailed information about each service request, including dates, customer names and addresses, who was involved in the servicing, who decided it was a

problem caused by Synergetics' adapter, how that determination was made, and what else might have caused the problem. Rule 33(d), Fed. R. Civ. P., allows a party to produce business records when the answer to the interrogatory may be ascertained from those records and the burden of ascertaining the answer is substantially the same for both parties. Iridex objected that the interrogatory was overbroad and unduly burdensome, but it nevertheless provided the specific Bates identification numbers of a large number of service records; the records themselves had been produced two months earlier in response to document requests. The documents included the details of dates, names, addresses, model of laser, nature of the problem, and use of the Synergetics adapter. Synergetics had as much ability as Iridex to compile this data from the documents. Although the documents did not reveal how Iridex determined that the problem was related to the Synergetics adapter and they did not contain speculation about what else might have caused the problem, Iridex's objection that providing this sort of information in an interrogatory answer was unduly burdensome was a valid objection. Synergetics had the opportunity to take the deposition of the people involved in the determinations, but it failed to ask appropriate questions of those people. Iridex's answers to the interrogatory were sufficient, and the evidence provided by Iridex in its reply brief will not be stricken.

As set out in more detail in the last section of this order, Synergetics has had ample opportunity to conduct discovery. It chose to wait until the very end of a lengthy discovery period to take any depositions, but even though I might think this was not a sensible way to structure its discovery, I cannot say that these delays resulted in any prejudice to it. Even the most diligent discovery cannot find evidence that does not exist. Given the overwhelming and consistent evidence that Iridex has presented, there is no reason to believe that Synergetics would find anything that would save these counterclaims even if it had another six months for discovery. And of course, I already allowed it much additional time for the specific purpose of conducting discovery on this motion, and it still failed to produce any evidence that would allow the counterclaims to go to trial.

The undisputed evidence shows that Iridex is entitled to summary judgment on each of Synergetics' non-patent counterclaims.

## II. Synergetics' Motion to Amend Counterclaims

With less than two months left before trial, Synergetics filed a motion to amend its counterclaims to add claims for attempted monopolization, monopolization, and abuse of process. Iridex opposed the motion and sought sanctions for its filing. Synergetics has now filed a memorandum seeking to withdraw the motion to amend, and seeking additional time to file a brief on the

sanctions issue. Iridex wants a ruling on the merits denying leave to amend as futile.

I will allow Synergetics to withdraw the motion to amend, and I will deny Iridex's request for sanctions. It is simply far too late to add this claim to this case. No further briefing on this issue will be allowed. This is not a ruling on the merits of whether Synergetics's proposed new claims are futile or brought in bad faith, although I believe there is a good argument that they are. I see no need to rule on the dispute over sanctions. Synergetics says it needs to respond, but since I am denying the request, it does not. The parties are cautioned that this order should not be cited by either side as a ruling on the merits of anything.

### III. Iridex's Motion to Compel

Iridex seeks production of documents that Synergetics asserts are privileged, and it seeks production of drafts of Synergetics' expert witness reports. I will grant the motion to compel in part.

I previously ordered that Synergetics had waived the attorney-client privilege with regard to certain documents, but I did not have enough information to know exactly what documents were covered by the waiver. The parties were able to resolve most of what was covered, but disputes remained as to some documents. I recently ordered Synergetics to produce five of the disputed

documents for my *in camera* review. I have now reviewed those documents and conclude that four of the five documents should be produced. The waiver of privilege does not cover the document bearing bates number 3685-400009 (# 97). Synergetics must produce to Iridex the other four documents that were submitted for *in camera* inspection.

Synergetics' expert witnesses testified that Synergetics' attorneys prepared the first drafts of their expert reports, and then the witnesses and attorneys sent revisions and changes back and forth, often through email. All of these drafts and the correspondence with counsel surrounding them are discoverable. See Rule 26(b)(2), Fed. R. Civ. P.; In re Pioneer Hi-Bred International, Inc., 238 F.3d 1370, 1375 (Fed. Cir. 2001); Synthes Spine Co. L.P., v. Walden, 232 F.R.D. 460 (E. D. Pa. 2005); Trigon Ins. Co. v. United States, 204 F.R.D. 277, 283 (E. D. Va. 2001). Iridex contends that it cannot tell whether all the drafts have been produced, nor can it tell who created and/or revised each draft. Synergetics says that it has produced all drafts "as far as [it] knows." This is an insufficient response, especially given the testimony that counsel had such important roles in drafting and revising the expert opinions. Synergetics must therefore produce (again, even if some have already been produced) copies of all drafts of all expert opinions, together with all communications between Synergetics' employees or counsel and

the expert witnesses regarding the drafts.  Synergetics must also provide a declaration of counsel stating that all drafts and correspondence in existence have been produced and explaining the chronology of the revisions and the author of each set of revisions.  This declaration will be binding on Synergetics and may be used for cross-examination of the expert witnesses.

## IV. Synergetics' Motion to Take Additional Discovery

Synergetics seeks to take the deposition of non-party Mike McGowan and to require Iridex to respond to written discovery requests propounded on February 15.  I will deny the motion.

The original Case Management Order set the discovery completion deadline as November 3, 2006, as proposed by the parties.  I later extended that deadline to December 22, 2006, and extended the motion to compel deadline to January 17, 2007.  On December 11, 2006, I granted Synergetics additional time to respond to Iridex's pending summary judgment motion on Synergetics' non-patent counterclaims so Synergetics could take more discovery.[3]  Iridex opposed that request for additional time because Synergetics' counsel had previously indicated that they were ready for summary judgment and any additional discovery would

---

[3]Synergetics' motion requesting this extension stated that at that time it had taken *no* depositions of Iridex's personnel, even though the case had been pending for more than a year.

not be needed for motions, but I allowed the additional time anyway.  On January 16, 2007, Synergetics again sought additional time for completing discovery and filing motions to compel, and again Iridex opposed the request.  Once again, I overruled Iridex's opposition and gave the parties until February 15 to complete discovery and until February 20 to file motions to compel.  Each party filed motions to compel on the February 20 deadline.

Ten days after the deadline for filing motions to compel, Synergetics filed its "Motion and Memorandum for Leave to Proceed with Discovery Propounded before the Close of Discovery."  This motion asks that I order Iridex to respond to written discovery propounded on February 15, and that I allow Synergetics to take the deposition of a non-party, Mike McGowan, which Synergetics had previously scheduled more than once.  The motion was notable in two important aspects.  First, it sought to compel responses to discovery, but was not labeled as a motion to compel, presumably because the deadline for such motions had already passed.  Second, and more significantly, it did not say what had happened at the McGowan deposition:  the motion just said that Synergetics' counsel flew to Philadelphia to take the deposition, and Iridex's counsel had decided not to attend the McGowan deposition but had not told Synergetics of that decision.  My reaction upon reading it was to wonder what had happened – did they take the deposition or not, and if

not, why not?  Only when Iridex filed its response did I learn that McGowan and his counsel appeared at the deposition site at the time agreed to, that the court reporter and videographer were also there, but *Synergetics' counsel failed to appear*.  Instead, Synergetics' counsel called McGowan's counsel at the deposition site and said that she was cancelling the deposition because the airline had lost her bag containing exhibits.  McGowan was under subpoena, this was the second time his deposition had been scheduled, he and his attorney were at the appointed location ready and willing to proceed with the deposition, but Synergetics chose not to take it.

Iridex had no duty to attend the McGowan deposition:  Synergetics had noticed it and subpoenaed the witness, and Iridex's attendance or non-attendance was totally irrelevant to Synergetics' ability to take the deposition.  Synergetics had told me in December that it needed more time for discovery in part because it needed to take McGowan's deposition.  McGowan had been disclosed in the Rule 26(a) disclosures months earlier.  Synergetics knew who he was, had the opportunity to take his deposition, and had plenty of time to do so.  The subpoena required McGowan to produce documents, although I do not know whether he actually brought documents to the deposition.  Synergetics may not know either, since it didn't bother to even go to the deposition, much less ask Mr. McGowan

any questions. In the motion Synergetics implied that its own actions were related to Iridex's decision not to appear, but in its reply brief it says its decision was related partly to its lost suitcase. Neither of these excuses is reasonable or credible, especially when Synergetics chose not to tell me the whole story in its initial motion. I have extended the deadline three times for Synergetics to do what it claims was essential to proving its own case. Synergetics had more than a year to take the discovery, yet it chose first to delay taking any depositions till the very end of the discovery period, and then it chose not to take McGowan's deposition when it had the opportunity to do so.

As to the written discovery requests, Iridex has pointed out that they could have been propounded long ago. My January 29 order extended the deadline for *completing* discovery to February 15. Nothing in that order allowed either party to propound additional written discovery on the very day discovery was to have been completed. Synergetics did not say in its motion seeking that last extension that it wanted to propound written discovery: it certainly could have told me that and asked that I shorten the time for responding if it really needed the discovery, but it did not do so. No further discovery will be allowed.

V. <u>**Issues Remaining for Trial**</u>

As a result of this order and my earlier summary judgment rulings, the

following issues remain for the trial set to begin on April 16, 2006: Iridex's damages from Synergetics' infringement; whether Synergetics' infringement was willful; whether Iridex's claims are barred by the equitable doctrines of laches and/or estoppel; and whether the patent is invalid for obviousness. The case will be reached first on the April 16 trial docket, and as previously ordered, the parties' pretrial submissions are due no later than **March 27, 2007**. I do not expect to extend any more deadlines, and I have included in this order certain additional pretrial submissions required, as well as a final pretrial conference.

Accordingly,

**IT IS HEREBY ORDERED** that Iridex's motion for summary judgment on Iridex's counterclaims of false advertising, defamation, and injurious falsehood [#131] is granted, and Iridex is entitled to summary judgment on Counts II, III, and IV of the counterclaim.

**IT IS FURTHER ORDERED** that Synergetics' motion to withdraw its motion to amend [#257] is granted.

**IT IS FURTHER ORDERED** that Synergetics' motion to compel further answers to interrogatory 19 [#260], its motion to strike [#279], and its motion for leave to proceed with discovery [#292] are denied.

**IT IS FURTHER ORDERED** that Iridex's motion to compel [#263] is

granted to the extent set out above, and Synergetics shall produce the items covered by this order no later than **March 16, 2007**.

**IT IS FURTHER ORDERED** that all requests for sanctions are denied.

**IT IS FURTHER ORDERED** that a final pretrial conference will be held on **Thursday, April 12, 2007 at 9:00 a.m.** in Courtroom 14 South.

**IT IS FURTHER ORDERED** that in addition to pretrial requirements set out in earlier orders:

1. Motions in limine should be kept to a minimum and may not be filed with regard to evidence that is only relevant to the bench trial issues. Motions in limine are due no later than **April 6, 2007** and any party opposing a motion in limine must file a written brief in opposition no later than **April 10, 2007**. No further briefing will be allowed.

2. In addition to jury instructions, the parties are each directed to file, with their initial pretrial submissions, proposed forms of verdict, including special interrogatories, on all issues remaining for jury determination. Each side is directed to file complete proposed jury instructions and proposed forms of verdict and special interrogatories for all jury issues, regardless of which party bears the burden of proof.

3. At the beginning of the trial the parties shall jointly provide the court

with a list of all exhibits that may be received in evidence without objection. I will receive all such exhibits into evidence at the beginning of the trial.

    4.    The trial day will normally run from 9:00 a.m. to 5:00 p.m., but counsel must be present in the courtroom and ready to proceed at 8:30 a.m. each day. On Friday April 20 the trial day will end no later than 1:00 p.m.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 12th day of March, 2007.